RAYMOND REALTY AND INVESTMENT COMPANY, A COR-
PORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. MORRIS PINSKY, DEFENDANT-RESPONDENT.

Argued February 7, 1934—Decided April 12, 1934 .

For the plaintiff-appellant, *Theodore McC. Marsh.*

For the defendant-respondent, *Edward R. McGlynn.*

The opinion of the court was delivered by

CASE, J.   The appeal is by the plaintiff from a judgment
entered in the Essex County Circuit Court on a verdict for
the defendant directed by the Common Pleas judge who
presided at the trial.   The suit was to recover $6,000 with
interest from September 4th, 1931, the amount of a mort-
gage debt that had been owed by a third party to the de-
fendant and assigned by the latter with a guaranty of pay-
ment to plaintiff.

Upon the evidence the following factual finding could have
been reached: Morris Pinsky was the holder of a $6,000
mortgage maturing September 4th, 1928.   Before that date
he, personally and also through his attorney, Abraham M.
Herman, notified the mortgagors that he wanted the mortgage
paid when due; but on the due date neither the principal
nor the interest was paid, and of this Pinsky knew.   There-
upon Herman spoke to the plaintiff's president about having

the plaintiff buy the mortgage, and that officer told Herman and also told Pinsky that plaintiff would not take the mortgage unless on a guaranty from Pinsky. Pinsky replied that Herman was handling the matter for him. Plaintiff did buy the mortgage from Pinsky for the sum of $4,800 and paid for it by check drawn to Pinsky's order. The check, at the request of the payee, was certified by the bank upon which it was drawn on December 11th, 1928, was endorsed by Pinsky and was banked December 12th, 1928. Pinsky executed and delivered to plaintiff an assignment of the mortgage. The assignment bore the nominal date of September 4th, 1928, the due date of the mortgage, but was acknowledged by Pinsky, in the usual form, on December 11th, 1928, and contained this clause: "And I do hereby guarantee the punctual payment of the principal and interest of said mortgage at maturity, waiving notice of default by the mortgagor, subject only to the proviso in the said indenture of mortgage mentioned." The assignment contained a covenant by Pinsky that there was then due and owing upon the bond and mortgage the sum of $6,000 principal and interest thereon "from the fourth day of September, 1928." Simultaneously with the closing of the transaction between defendant and plaintiff, plaintiff closed with the mortgagor an extension of the mortgage for a term of three years from September 4th, 1928, to September 4th, 1931. The written extension also bore the nominal date of September 4th, 1928; but the payment to Pinsky of the money due him, the assignment and the extension constituted "a three-cornered transaction—it had to be closed simultaneously." The mortgagor defaulted in the payment of the mortgage at the postponed maturity date and, hence, the suit.

Upon the foregoing assumption of fact, the vital question, in our view, is whether the "maturity" referred to in the guaranty was that of the mortgage as originally executed or as extended by the plaintiff, and the answer to that question should, we think, have been left to the jury. When Pinsky executed the guaranty, the mortgage was past due by more than two months; he knew, of course, that the mortgage

had not been paid at maturity and had not been paid at the execution of the guaranty; that the mortgagor had not the money with which to pay it, and that the transaction then newly entered upon was the outcome of that default and that inability. The waiving of notice of "default by the mortgagor" becomes meaningless, and the assurance that the punctual payment of the mortgage would be made at maturity and the covenant that interest was due from September 4th, 1928, become quite incomprehensible if the reference was the default that had inspired the tripartite transaction and to the original and long-past due date of the mortgage. On the contrary, the guaranty has full significance and is entirely understandable if the reference was to the extended date, to the punctual payment of the mortgage debt at that time and to the waiving of notice of such default as might then occur. We think that the evidence would sustain as a legitimate inference (*Andre* v. *Mertens,* 88 *N. J. L.* 626) that Pinsky was fully cognizant of the third branch of the three party arrangement, and that he intended the guaranty to relate to the postponed maturity thereby accomplished.

The evidence would amply support a finding that Herman was acting as Pinsky's attorney throughout the transaction, and this notwithstanding Herman was then a stockholder and a director of the plaintiff company. Herman had full knowledge of all the facts. Nevertheless we have demed it unnecessary to consider, and this being so and the question not having been argued, have not considered, whether the knowledge of Herman should be imputed to Pinsky (see *Dickerson* v. *Bowers,* 42 *N. J. Eq.* 295; *Fidelity Trust Co.* v. *Baker,* 60 *Id.* 170, 177; 6 *C. J.* 638, *pl.* 144, *et seq.;* 4 *A. L. R.* 1592); a negative view would not affect the result and an affirmative finding would simply add weight to the conclusion reached.

The points presented by the respondent are:

(1) A concession, which need not be discussed, that, for the purpose of the appeal, Pinsky is bound by the guaranty agreement.

(2) The 1928 extension agreement was actually made. This we assume.

(3) The words "at maturity" were not intended to mean "at the expiration of the extension agreement." This, we think, was a jury question.

(4) The 1928 extension agreement was not usurious. This also we assume.

(5) There was no evidence that the defendant consented to the 1928 extension agreement. Consent, as such, was not material. Knowledge, and an undertaking based on that knowledge, were, we think, jury questions.

(6) Plaintiff and the mortgagor in 1931 orally agreed to a further extension of the maturity date and thus discharged the defendant. The meager and vague proofs shown by the record on this subject will not, we think, sustain the proposition that the facts upon which such a contract, if it exists, must rest are stated with sufficient clarity and precision to justify the court as a matter of law in determining them.

The direction of verdict was erroneous. The judgment below will be reversed, and a *venire de novo* will issue.

*For affirmance*—PERSKIE, VAN BUSKIRK, JJ. 2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.